This next case is 4-15-0035 Baumgartner v. Greene County State's Attorney's Office et al. Counsel, could you state your appearances for the record? Your Honor, my name is Elliot Turpin and I represent the petitioner, Kyle Baumgartner, in this case. Okay, thank you. Your Honor, it's Linda, watching on some on behalf of the Illinois State Court. Thank you. Mr. Turpin, you may proceed. Thank you, Your Honor. Good morning. Well, by now, I think all five of the appellate court districts in this state have had the opportunity to rule on quorum and the 2013 amendments to the Foyd Card Act, and it would appear that they're all in unison that under the 2013 amendments to that act, a person who applies for Foyd Card relief under that statute would not be entitled to that relief if that would be prohibited by federal law. So while I'm not abandoning or conceding my argument one, I've got a pretty good idea as to how the court's going to come out on that particular issue, so I'm just not going to concentrate my efforts on that today. And part of the reason, too, is that, as I've stated in my issue number two, in this particular case, it doesn't matter. It doesn't matter how this court interprets quorum. It doesn't matter how this court interprets the 2013 amendments because, in this case, granting Kyle Baumgartner a Foyd Card would not be contrary to federal law. His domestic battery conviction does not prohibit him, under federal law, from possessing a firearm because he has had his civil rights restored. So, therefore, his conviction does not count as a disqualifying conviction for purposes of federal law. Under 18 U.S.C. Section 921A-33B, Small Roman Numeral II, or as I like to call it, Section 921, a person who is not considered to be convicted of an offense if he has had his civil rights restored and the restoration does not expressly say that he can't possess a firearm. Well, Kyle Baumgartner did have his civil rights restored. He was sentenced to 65 days in jail on the domestic battery charge and, therefore, he lost the right to vote. Upon his release, that right was restored. The law in Illinois is clear and no one disputes that when a person is sentenced to jail, he loses the right to vote while he's incarcerated and that right is automatically restored upon his release. And the right to vote is one of the, what we call, the core civil rights that we look at for purposes of these federal statutes that indicate whether someone can possess a firearm or not. It's the right to vote, the right to serve on a jury, and the right to hold office. Nobody disputes that either. The law is very clear on that. So, if a person is sentenced to jail, they lose the right to vote, they've had that right restored, then their civil rights have been restored for purposes of the federal statute. It's service of time in jail following sentence that results in the taking away of a civil right and then, upon release, the restoration of the civil right that you're talking about. Is that right? Well, I know that's the position of the state. The state indicates that you have to be in jail after your conviction. They've created this argument that if you only get time served, then that doesn't count. Well, first of all, that argument has been waived by the state because they didn't raise it at the trial level. But, additionally, the record doesn't indicate that all he got was time served. We know from looking at Volume 5 of the record, which has the complete record of the domestic battery slash possession of cannabis case, that when he was sentenced to 65 days in the Greene County Jail on the domestic battery charge, it doesn't say that he got credit for time served. Now, on the DOC sentence, he got credit. Isn't he required to be provided with that credit by statute? Well, my response to that, Your Honor, would be twofold. Number one, as we know, he also got a sentence to DOC, which I'll have to deal with in a little bit, too. But under our Illinois law, when a person gets, in the same case, a sentence to county jail and to DOC, pursuant to Section 584 of the Unified Code of Corrections, those sentences get served simultaneously. You get transferred to the Department of Corrections, those sentences run together. So he did his time in the Greene County case when he was in DOC. Now, as far as the question is, doesn't he automatically get that? Well, I think since the record didn't reflect that he was given credit for that time, I think that's one of those things that if you don't assert that right, then you've essentially waived it. And I think that's what happened here. And really, I guess there was no sense in saying that he got credit for time served on the jail sentence because he was going to be doing that in the Department of Corrections anyway. He got 65 days credit on his DOC sentence, certainly. But that's why my position is that even if he did get credit for time served, that is still part of the sentence. These federal cases don't say anything about you have to do jail time after you are convicted or you plead or you're sentenced. Wasn't he in custody for more than 65 days prior to his conviction? I don't know that he is in custody for more than 65 days. That might have been where the 65 days came from. But my position is that if you look at the credit for the time served that he would get is part of the sentence because by statute, as you indicated, Justice Harris, he would be entitled to assert that credit. But that makes it so that that is actually part of the sentence because any credit for time served that he gets determines how long he's going to be behind bars after he pleads. And he was behind bars after he pled. He went to the Department of Corrections. Had there been no Department of Corrections sentence in this case and it had just been a sentencing hearing of let's say 65 days with credit for time served, would that have been something cognizable under your argument that his civil rights had been restored? I believe it would, Your Honor, because if you read the United States v. Staples case that I've cited from the Seventh Circuit, which did interpret Illinois law, in that case what happened was the defendant served 250 days in jail on one case. Then he had his probation revoked in another case. And after he had served that 250 days in jail on that first case, he was sentenced to 250 days in jail on the second case but was given credit for time served in that case, in the earlier one. And what the court said was that he was considered to have served 250 days in jail on the second case as well, even though he had already served in the first case. And what the court said was that credit for time served evinces the court's determination that the offender must spend some time in jail. But he has already spent that time either awaiting trial or on another offense. So I think there is authority certainly for, if we are going to say that all he got was time served, that that is part of the sentence and he was sentenced to jail and that he did lose his civil rights. There's no question that he went immediately from the Greene County Jail to the Department of Corrections. Well, under Illinois law, you lose your civil right to vote when you're sitting in jail. Is that right? Well, under Illinois law, you lose your right to vote when you're sentenced to jail. Well, here we're getting kind of, I guess, where your point is. No, I think actually when you're sitting there. I don't think you can vote from jail. It would be pretty difficult to vote from jail, yes. Well, I think in fact you're not eligible. Isn't that the rule? I think the statute does say, I don't know that the statute determines whether it's prior to or after, but yes, I would say that you would lose that right. Otherwise, Menard would be the largest precinct, I think, in Randolph County. Either that or Pontiac, perhaps, yes. Okay, so you can't vote while you're sitting in jail, but when you're out of jail you can vote. There's no lingering, at least for misdemeanors certainly, there's no lingering limitation, is there? That is correct, there is not. In fact, there's not even any lingering limitation for a felony either. When you're sitting in jail for a felony and you lose the right to vote, you get back out and you can vote. Okay. And you can't hold office while you're in, under a sentence for a felony either. So in a technical term, if a guy is convicted and sentenced and given credit for time previously served, how has his, how from that point have any of his civil rights been infringed on, the right to vote, to be restored after he gets out of jail? Well, as we've just indicated, if he's not allowed, if he is disenfranchised while he's in jail, then... But he was disenfranchised before he was sentenced. Correct. But I don't know that these interpretations of this scenario have been so technical as to say, well, he has to spend more time after he pleads in order to lose his civil rights. Well, you know, we're talking not about necessarily good sense, but federal legislation, aren't we? Exactly. Not the same thing. In my experience, that's correct, Your Honor. If you assume, for the sake of this question, that pretrial detainment prior to conviction and sentence does not result in the defendant losing his right to vote, and if he is subsequently convicted and sentenced to probation, does any of that pretrial detention... Would your position be different here? Well, I think... And I'm sorry, that was kind of confusing. This takes 65 days of pretrial detention, just like it was here. There's a conviction, but instead of what the sentence was here, he's sentenced to probation. Did he lose his civil rights and then have it restored? Well, and this might be splitting hairs, but that certainly wouldn't be unprecedented for this issue. If all he got as part of his sentence was probation, and he didn't get any jail time as part of his sentence, then I think it would be a weaker argument that he lost his civil rights. Now, if he got probation plus time served in jail as part of his sentence, then I think that, especially under the case that I've just cited, I think that you could say that he did lose his civil rights. And again, we're talking about, for what issue are we discussing this? Is it for whether he could vote when he was in jail, as he's trying to assert his right to vote when he's in jail? Or after the fact, are we looking to see whether he, I guess retroactively, lost his right to vote? If all he got... Let's assume that, as you indicated, Justice Harris, that you don't lose your right to vote just for sitting in jail before you plead. If all he got was probation, and the only kind of credit that he got for that jail time was $5 a day toward his fine, I think I would have a harder argument. In fact, making that assumption, I don't think I could correctly say that he lost the right to vote. But again, that's not what happened here. Even if you say he got 65 days with credit for 65 days served, under the federal case that I've cited, he still would have lost the right to vote because he still served that time. Now again, we throw in the additional wrinkle here that he also served a DOC sentence, and I think that explains why the record indicates that he got 65 days credit on the DOC sentence, but not on the jail sentence for the domestic battery, because he was going to be serving them at the same time anyway. And the equation takes into consideration how much time he served, and that determines how long he's physically going to be locked up behind bars. That's why that time served is, in fact, a part of the sentence. But in this case, the record simply does not indicate that he got just time served on the domestic battery. So for those reasons, your honors, the petitioner in this case, Kyle Baumgartner, did serve 65 days in jail on domestic battery, lost the right to vote. That was restored when he came back out. Now the second part of the equation under that federal statute, does the restoration of rights expressly say that he cannot possess a firearm? No, it doesn't. As the United States agrees with me, as they did in the issue we've just been discussing, about loss and restoration of civil rights, there is no statute in Illinois that says a person convicted of domestic battery can't possess a gun. And there's no other provision that there would be that would expressly say that upon restoration of this civil right to vote, he can't possess a gun. So that is why this exemption in Section 921 applies to Kyle Baumgartner. And that is why, at least because of his domestic battery conviction, he is not prohibited under federal law from possessing a firearm. So his domestic battery conviction does not prevent that, and granting him void card relief from the domestic battery conviction would not be contrary to federal law. This may not be germane to the outcome of this case, and it is, but I just want to ask you about what appears to be a paradox, where you look at two different defendants, similarly situated. One convicted of domestic battery and sentenced to probation, and one sentenced to 180 days in jail, and serves that time. The one that's given probation doesn't have his civil rights restored in order to get his void card back. Can you comment on that? Do you know of any cases that discuss that? Well, I think there are some cases that discuss that, and I think those cases, the ultimate rulings in those cases, might not be good law anymore. But I know where you're going with that, Justice Harris, and it is here. Why should we reward a guy who did apparently something egregious enough to get sentenced to jail time with getting his void card back, whereas somebody who apparently didn't do something as bad and only got probation doesn't get to get his void card back? I think that's the layman's sense of what your question is, Your Honor, and I'm glad you prefaced that by saying it's not germane to this case, because the only answer I've got to that, probably sounds kind of silly, but here's my answer. Apparently, the legal system has a very optimistic view of the penal system, and they're saying that someone who goes to jail is going to come out rehabilitated and ready to possess a firearm, whereas somebody who only gets probation is not. And how I just said that with a straight face, I have no idea. But there is an interesting case. It was one that I cited in my original brief, the Wegerson case from the Sixth Circuit. The actual black-letter law that I cited that for is correct, because it talks about, under Michigan law, a person can get jail time for domestic violence, and if a person does get jail time for domestic violence, then they lose the right to vote under Michigan law, and then once they get out, they have had their civil rights restored, and the federal ban doesn't apply to them. What they did in that case is they basically said, okay, we know that this guy who got a suspended sentence for domestic violence didn't really lose his rights, but because of the question that Your Honor just posed to me, we're going to say that it's not really fair to punish this guy when somebody who did something worse gets to get his firearm rights back. So they basically said, well, since you can get jail time, even though this guy didn't, we're going to say that he is exempt from the federal ban. Under Logan v. United States, that particular holding, as far as that particular defendant, I don't think would hold up today, because that guy didn't lose his civil rights. Logan says you have to actually lose your civil rights to begin with. So that's one case, and I think it cited maybe a couple of other cases where they kind of did the same thing. It was more of a policy type thing. Under Logan, I don't think that holding is good law anymore. However, the purpose for which I cited that case, again, which is the black letter law that if for domestic battery you go to jail, lose your right to vote, get it back after you come out, then you've had civil rights restored, I mean, that argument is still valid. Well, now I need to talk about the issue that I'm not particularly happy to be talking about, but we've got to anyway, and that is the fact that Mr. Baumgartner did get a felony conviction and was sentenced to the Illinois Department of Corrections. This was not raised by the state at the trial level. This was not cited as a reason to deny his FOID card. Again, for reasons I have no idea why. So my position is that it's waived, but let's face it, we've got to look at this and we've got to deal with it sometime, and while we're all here, we might as well take a look at it now. What I had asked for in my ultimate prayer for relief in this case is for the court to order the Illinois State Police to issue Kyle Baumgartner a FOID card. If the court feels that it can't order a FOID card because of this lingering felony conviction, but still can rule that he has cleared the hurdle of his domestic battery conviction, well, so be it. That will at least clear one of my hurdles that I have to get through. The court can still rule that the domestic battery conviction doesn't disqualify him, but the court could say, well, you have to go back and deal with the Illinois State Police on this felony issue. But, I feel that the court can deal with this issue and dispose of it as well. Under federal law, this is section 922G1 of the Federal Criminal Code, a person convicted of a felony cannot possess a firearm. But there's also an exemption for this, like there is for the domestic battery. This is section 921A20, which says that conviction is not a conviction if the civil rights have been restored and the restoration doesn't expressly say that the person can't possess a firearm. Now, Kyle Baumgartner did a year in the Department of Corrections. He lost the right to vote and the right to hold office while he was there. Upon release, that was restored. I don't think anybody would dispute that. The kicker in this case is, does the restoration of those rights say that he can't possess a firearm? Well, conditionally, yes it does. Because, as we know, under our criminal code, section 24-1.1, a felon can't possess a weapon. But, 24-1.1 does have an exemption. If you have received relief from the Illinois State Police under section 10 of the Floyd Card Act, then you are exempt as a felon from this restriction from possessing a firearm. So if a defendant were to obtain relief under the Floyd Card Act, as set out in section 24-1.1, the statute would no longer prohibit him from possessing a gun. And then he would have no disability under the state or federal law. I know I'm about to run out of time here, but my position on this is that if this court, since my client petitioned for relief under section 10 of the Floyd Card Act, if this court agrees with me and finds that he did establish that he is no longer under a federal bar for his domestic battery conviction, the court can find that he is essentially entitled himself to relief under section 10 of the Floyd Card Act, and that that would remove his felony disability as well. The court did originally find that he is a fit person to possess a weapon, and that those findings that the court made have not been challenged even, and certainly not been overturned. The court vacated its original ruling only because of the legal issues. And although section 24-1.1 does say that you have to get relief under section 10 from the Director of Illinois State Police, at the time that statute, section 24-1- Mr. Turpin, you are out of time. You'll have time in response. Okay, thank you. All right, thank you. Counsel. Good morning, Your Honors. If I may briefly walk this court through a few of the relevant documents and dates concerning Baumgardner's conviction. Page 4 of Volume 5 of the record contains Baumgardner's arrest warrant. He was arrested on July 31st of 2007 and charged with unlawful possession of a stolen firearm, unlawful possession of cannabis with intent to deliver it, domestic battery, and a few other charges. Page 13 of Volume 5 of the record shows that Baumgardner was sentenced on October 4th, 2007, which is exactly 65 days after his July 31st arrest. He was given a sentence of one year in the Department of Corrections for possession of cannabis. Separately, he was given 65 days for domestic battery, and he was given credit for time served on that count. Page 18 of Volume 5 of the record, which is the state's attorney and judge's official statement of facts, shows that he was given 65 days credit for time served. What document are you looking at that says that he was sentenced to 65 days in jail? I am looking at, so the documents are page 4 of Volume 5, that's his arrest warrant. Then on page 13 of Volume 5, which is this document here, it shows that he was given a sentence of one year in the Department of Corrections on count 4, which is the possession of cannabis, and then 65 days on count 6, which is the domestic battery charge. And then page 19 of Volume 5 of the record, which is the judgment order from the Department of Corrections, confirms that he was sentenced to one year in prison on his felony conviction. So, of course, Baumgardner doesn't dispute that he was convicted of misdemeanor domestic battery, and under Section 922G9, this conviction makes him federally prohibited from possessing a firearm. Article 3 of Section 2 of the Illinois Constitution states that a person under sentence in a correctional institution or jail shall lose the right to vote, which right shall be restored not later than on completion of his sentence. So the plain language of the Constitution states that Baumgardner had to be in jail under sentence for misdemeanor domestic battery for his rights to have been revoked and then restored. But as the documents in the record demonstrate, he was never under sentence while in jail for domestic battery. He insists that he served time for domestic battery, but again, the record shows that he wasn't under sentence. And that's the question that we have to ask based on Article 3 of Section 2 of the Illinois Constitution. So Baumgardner was sentenced to time served, or rather time spent while awaiting trial. And as various courts have ruled, time spent awaiting trial is not the same as being in jail or prison under sentence. In its amicus brief, the Department of Justice was correct on the law, but it didn't recognize that as a factual matter, Baumgardner was never in a prison or jail under sentence for misdemeanor domestic battery. So for that reason, the Department of Justice was wrong to conclude that his civil rights were revoked and restored and that the federal prohibition has been lifted. So given that Baumgardner's federal prohibition from possessing a firearm remains, as counsel acknowledged, there's no longer any real dispute about the correctness of the circuit court's decision to vacate its order that had required the state police to issue a FOID card. The resolution of this case falls in line with all of the recent appellate court decisions that analyzed the 2013 amendments to the FOID Act. For example, this court in Walton v. Illinois State Police confirmed that a circuit court lacks authority to reverse the state police's revocation of a FOID card under 430 ILCS 65-10B, where the petitioner is prohibited from owning a gun under federal law as Baumgardner is here. This court's decision was in agreement with the 2nd District's Frederick case and the 3rd District's decision in O'Neill and the 5th District later reached the same conclusion in Odell. So Illinois courts, as counsel acknowledged, have uniformly rejected his argument about the impact of the quorum decision. With respect to Baumgardner's constitutional argument, he didn't raise it in the circuit court, meaning that it's forfeited and this court shouldn't rule on it. Courts have recognized that as-applied challenges should not be heard for the first time on appeal when there hasn't been an evidentiary hearing on the constitutional issue from which the circuit court can make findings of fact. In this case, Baumgardner never raised a Second Amendment challenge in the circuit court, so the state's attorney was not on notice of that claim and didn't have the opportunity to present any evidence to rebut it. As a factual matter, even the record that we have does cast doubt on Baumgardner's claim that he's been a law-abiding citizen since his 2007 arrest. Page C-19 of the record shows that in May 2009 he was arrested for driving under the influence. Page C-20 of the record shows that he was arrested again in September 2009 for driving under the influence. These arrests, among many other issues, would have been explored at an evidentiary hearing if Baumgardner had presented his Second Amendment challenge to the circuit court. But his failure to do so means that this court should not entertain the argument on appeal. To the extent that this court does consider his constitutional claim, it should be rejected on the merits. We have no evidence that Baumgardner has sought expungement or a pardon from the governor, which are options that are available to him in order to possess a FOID card. His reply brief suggests that it's unlikely that the governor would grant a pardon, but before this court can rule that a statute is unconstitutional as applied to him, he has to have taken every possible step available to him in order to obtain a FOID card. He bears the burden of showing a statute's unconstitutionality, and when he has avenues for relief that are available but he hasn't taken them, he hasn't met that burden. So unless this court has any questions, for these reasons and those stated in our brief, we ask that you would affirm the circuit court's judgment. Thank you. Thank you. Mr. Kerr. Thank you, Your Honor. I will take the opportunity to finish what I talked too long to allow myself time to argue previously on the felony conviction. Basically my point on that is that although the statute says that, or talks about, getting relief from the Director of State Police under Section 10 of the FOID Card Act, and again I'm talking about the unlawful possession of weapons by a felon in the statute, that statute was enacted at a time when the FOID Card Act didn't have any provision for going to the trial court for relief. So I don't think it should be read to restrict its application only to people who have gone through the Illinois State Police. It wouldn't make any sense to say someone who's obtained relief from the Illinois State Police can possess a gun as a felon, but not someone who's obtained relief from the trial court. That would just not make any sense. So my position on that is that if this court finds that Kyle Baumgartner has established his right to relief, as a misdemeanant, he has established his right to relief under Section 10, and he should not have to go back now to the Illinois State Police and start all over again. With respect to the argument of counsel regarding time served, none of those pages cited in the record by counsel say anything about Kyle Baumgartner getting credit for time served for domestic battery. They only say credit for time served on the cannabis charge, and that is the felony. And again, there are numerous documents that indicate what his sentence is. They all indicate 65 days and costs on the domestic battery charge. So there's no indication that all he got was time served. And that is why this case is different from Walton. It's why it's different from Odall. It's why it's different from O'Neill, and all those other cases that have decided this issue. This is the one where you've had jail time, loss and restoration of civil rights, and getting a Floyd card would not be prohibited by federal law because of the domestic battery conviction. And again, my position is the court can go ahead and find that he has had been afforded relief under Section 10 of the Floyd Card Act, so as to wipe out any disability for the felony. Any other questions? I don't see any. Thank you, Your Honors. Thank you. Thank you both. The case will be taken under advisement in a written decision.